UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CARLTON MILLER, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | No. 4:16-CV-00488 JAR |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

### MEMORANDUM AND ORDER

This matter is before the Court on Movant Carlton Miller's motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, as amended. (Doc. Nos. 1, 26). For the following reasons, Miller's motion is denied.[1] Also pending is Miller's request for permission to submit an addendum to his § 2255 motion (Doc. No. 44), which is granted, and motion for default judgment (Doc. No. 45), which is denied.

I. **Background**

On January 8, 2015, Miller pled guilty to a two-count Superseding Information pursuant to a written plea agreement and Federal Rule of Criminal Procedure 11(c)(1)(A). Count 1 charged Production of Child Pornography/Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a), 18 U.S.C. § 2251(e); Count 2 charged Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2), 18 U.SC. § 2252A(b)(1). The parties agreed to recommend to the Court that Miller be sentenced to a term of imprisonment of 27 years. (Plea Agreement, 4:14-CR-00353, Doc. No. 31, at 14).

---

[1] Because Miller's motion can be conclusively determined based on the motion, files and records of the case, an evidentiary hearing need not be held. See Shaw v. United States, 24 F.3d 1040, 1043 (8th Cir. 1994).

1

At his plea hearing, Miller acknowledged, under oath, that the following facts were true and correct:

Between April 20, 2014 and May 6, 2014, an online undercover operation conducted by the St. Louis City Police Department on BitTorrent, a peer-to-peer network, located an IP address offering to share video files which contained data values that matched known child pornography. Several video files that contained child pornography were downloaded from this IP address. An investigative subpoena revealed that the IP address in question was assigned to Miller. Pursuant to a valid state search warrant for Miller's apartment, Detectives seized Miller's laptop, external hard drive, cell phones, DVDs, CDs, and a silicone sexual device shaped like a female child's buttocks and vagina. A preliminary examination of Miller's external hard drive located photographs that had been taken with Miller's Samsung cell phone, including a series of four images depicting a prepubescent female's exposed genitals. Detectives later identified the female in the photograph as H.K., the seven-year old daughter of Miller's girlfriend, L.K.

A forensic examination of Miller's laptop computer hard drive revealed evidence of peer-to-peer software including torrent files. Ten images of child pornography were found in unallocated space on the laptop's hard drive. Detectives were also able to determine that files being downloaded through uTorrent (peer-to-peer software) were automatically defaulted to being saved on the "G drive," a USB external hard drive connected to the laptop at the time of the search warrant. Miller's external hard drive contained 69 videos and 219 images of child pornography, including the four images depicting H.K. Also on the external hard drive, Detectives located nine of the twelve videos of child pornography that Sgt. Muffler had been able to download from Miller's IP address between April 20, 2014 and May 6, 2014. Miller received these videos through the Internet and saved those images to his external hard drive. These videos depicted prepubescent

minor children engaging in sexually explicit conduct, sadistic or masochistic conduct, or other depictions of violence. Some of the children in these videos are under the age of the twelve.

Lastly, a forensic examination of Miller's Samsung cell phone revealed that the full photographs of H.K. had apparently been deleted from the device; however, several cache files of the victim still resided within the phone. These files matched the photos of H.K. from the external hard drive. Also, on Miller's Samsung cell phone were photographs taken through a window of girls between the ages of eight and fifteen years old from Miller's neighborhood. One series of photographs is of a girl swimming in a backyard above-ground pool; the other series is of preteen girls tumbling and playing in the area in front of Miller's apartment building. (Plea Agreement at 3-9; Plea Transcript (Doc. No. 11-1) at 22).

The transcript of the plea hearing reflects that the Court closely examined Miller regarding the voluntariness of his plea, and reflects a plea that was entered "freely, voluntarily, and intelligently, with a full understanding of the charges and the consequences of the pleas, with an understanding of his rights attending a jury trial, [and] the effect of the pleas of guilty on those rights." (Plea Tr. at 4-6, 32).

Miller waived his right to appeal his conviction and sentence in the event the Court sentenced him within or below the sentencing guideline range (Plea Tr. at 26-27) and further waived his right to contest his sentence or conviction in a post-conviction proceeding, except for claims of prosecutorial misconduct or ineffective assistance of counsel. (Plea Agreement at 27).

On April 9, 2015, the Court sentenced Miller to concurrent terms of imprisonment of 360 months for the crimes of Production of Child Pornography and Sexual Exploitation of a Child; and Receipt of Child Pornography, followed by a life term of supervised release. No direct appeal was filed.

On April 8, 2016, Miller filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Doc. No. 1). The Government filed a response on July 1, 2016. (Doc. No. 6); Miller filed a reply on August 29, 2016 (Doc. No. 16). On December 23, 2016, Miller filed an amended motion under 28 U.S.C. § 2255. (Doc. No. 26). The Court granted Miller leave to file this motion on December 29, 2016. (Doc. No. 27). On January 10, 2017, Miller filed an amended supplementary brief and appendix in support of his amended § 2255 motion. (Doc. No. 28). The Government filed a response to the amended motion on July 14, 2017 (Doc. No. 36); Miller filed a reply on October 30, 2017 (Doc. No. 41). On June 3, 2019, Miller sought leave to submit an addendum in support of his amended § 2255 motion (Doc. No. 44) and on August 8, 2019, moved for default judgment against the Government for failing to respond to said addendum (Doc. No. 45).

## II. Standard for ineffective assistance of counsel

Miller raises several claims of ineffective assistance of counsel in his amended motion, which he has grouped into four categories: (1) sentencing; (2) PSR/sentencing guidelines; (3) evidentiary issues; and (4) advocacy.

It is well-established that a petitioner's ineffective assistance of counsel claim is properly raised under 28 U.S.C. § 2255 rather than on direct appeal. United States v. Davis, 452 F.3d 991, 994 (8th Cir. 2006); United States v. Cordy, 560 F.3d 808, 817 (8th Cir. 2009). The burden of demonstrating ineffective assistance of counsel is on a defendant. United States v. Cronic, 466 U.S. 648, 658 (1984); United States v. White, 341 F.3d 673, 678 (8th Cir. 2003). To prevail on an ineffective assistance of counsel claim, a convicted defendant must first show counsel's performance "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 687–88 (1984). The defendant must also establish prejudice by showing "there is a

4

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Both parts of the Strickland test must be met in order for an ineffective assistance of counsel claim to succeed. Anderson v. United States, 393 F.3d 749, 753 (8th Cir.), *cert. denied,* 546 U.S. 882 (2005). The first part of the test requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Review of counsel's performance by the court is "highly deferential," and the Court presumes "counsel's conduct falls within the wide range of reasonable professional assistance." Id. The court does not "second-guess" trial strategy or rely on the benefit of hindsight, id., and the attorney's conduct must fall below an objective standard of reasonableness to be found ineffective, United States v. Ledezma–Rodriguez, 423 F.3d 830, 836 (2005). If the underlying claim (i.e., the alleged deficient performance) would have been rejected, counsel's performance is not deficient. Carter v. Hopkins, 92 F.3d 666, 671 (8th Cir. 1996). Courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error. Id.

The second part of the Strickland test requires that the movant show that he was prejudiced by counsel's error, and "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Anderson, 393 F.3d at 753–54 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. When determining if prejudice exists, the court "must consider the totality of the evidence before the judge or jury." Id. at 695; Williams v. U.S., 452 F.3d 1009, 1012–13 (8th Cir. 2006).

5

The first prong of the Strickland test, that of attorney competence, is applied in the same manner to guilty pleas as it is to trial convictions. The prejudice prong, however, is different in the context of guilty pleas. Instead of merely showing that the result would be different, the defendant who has pled guilty must establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); Matthews v. United States, 114 F.3d 112, 114 (8th Cir. 1997).

A court need not even determine whether a movant meets the "performance" prong of the Strickland test because both the United States Supreme Court and the Eighth Circuit Court of Appeals have noted that "'[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, *which we expect will often be so*, that course should be followed.'" Young v. Bowersox, 161 F.3d 1159, 1160 (8th Cir. 1998 ); See also Kingsberry v. United States, 202 F.3d 1030, 1032 (8th Cir.) (if the petitioner makes an insufficient showing on one component, the court need not address both components), *cert. denied*, 531 U.S. 829 (2000).

Where a defendant raises multiple claims of ineffective assistance, each claim of ineffective assistance must be examined independently rather than collectively. Hall v. Luebbers, 296 F .3d 385, 692–693 (8th Cir. 2002); Griffin v. Delo, 33 F.3d 895, 903–904 (8th Cir. 1994).

### III. Discussion

### A. Sentencing

### 1. Violation of Federal Rule of Criminal Procedure 11[2]

Miller first alleges his counsel was ineffective for failing to object when the Court announced it would not adhere to the plea agreement and never gave him a chance to withdraw

---

[2] The Government argues this claim, asserted for the first time in Miller's amended § 2255 motion, is time-barred. Because as discussed herein, the claim fails on the merits, the Court will not address the timeliness argument.

6

his plea pursuant to Rule 11(c)(5) (describing procedure to be followed when court rejects a plea agreement under Rule 11(c)(1)(C) for a specific sentence or sentencing range). This claim fails on the merits as the Court was not required to accept any sentencing recommendation agreed to by the parties to the plea agreement, i.e., Miller and the Government. The plea agreement in this case was made pursuant to Rule 11(c)(1)(A) and thus not binding on the Court. Miller acknowledged in the plea agreement that "the District Court is neither a party to nor bound by the recommendations agreed to in this document," and reiterated his understanding at the plea hearing:

> Q (By the Court): The parties are further agreeing to the guideline calculations and the guideline analysis that's set out in the plea agreement; but separate and apart from that, the parties are indicating that they are going to recommend to the Court at the time of sentencing that you be sentenced to a term of imprisonment of 27 years. But do you understand that the Court is not bound by the agreement. That's something I'll ultimately determine at the time of sentencing. Do you understand that; is that correct:
> A. Yes, your Honor, I do.
> Q. Any questions about that aspect of the agreement. That's very important that you understand that ultimately the Court will make those determinations at the time of sentencing, and you and your attorney, and the Assistant United States Attorney, will come in and recommend the sentence of 27 years; but again, it will ultimately be up to the Court to make the final determination. Do you understand that; is that correct?
> A. Yes, your Honor.

(Plea Tr. at 15-16). Miller had no right to withdraw his plea. Therefore, his counsel's performance can hardly be deemed to fall below the objective standard of reasonableness for failing to raise a meritless challenge. See Dyer v. United States, 23 F.3d 1424, 1426 (8th Cir. 1994); Rodriguez v. United States, 17 F.3d 225, 226 (8th Cir. 1994); Thomas v. United States, 951 F.2d 902 (8th Cir. 1991). This claim is denied.

7

## 2. Sentence beyond the maximum guidelines range

Next, Miller argues his counsel was ineffective for failing to object on the grounds that his sentence exceeded the maximum sentencing guidelines range of 262 to 327 months for Count 2. It is well settled in the Eighth Circuit that challenges regarding sentencing guideline issues are not cognizable in a § 2255 motion. See Auman v. United States, 67 F.3d 157, 161 (8th Cir. 1995). "While section 2255 does provide relief for cases in which 'the sentence was in excess of the maximum authorized by law,' this provision applies to violations of statutes establishing maximum sentences, rather than garden-variety Sentencing Guideline application issues." Id. Instead, alleged errors in applying the sentencing guidelines should be pursued on direct appeal. Id.; United States v. Wilson, 997 F.2d 429, 431 (8th Cir. 1993) (per curiam).

In any event, the Court sentenced Miller within the applicable guideline range. In the PSR, Count 1 had an adjusted offense level of 42 and Count 2 had an adjusted offense level of 37. The Court calculated a combined offense level of 43 by adding one level to the higher offense level of 42. See U.S.S.G. § 3D1.4. The Court then subtracted three levels for acceptance of responsibility, see U.S.S.G. § 3E1.1(a), (b), and concluded that Miller's total offense level was 40. With a criminal history category III, Miller's resulting advisory guideline range was 360 months to life. See U.S.S.G. §5G1.2(d). Because the Court sentenced Miller to 360 months, at the bottom of that range, there was nothing for Miller's counsel to object to at sentencing. See Rodriguez, 17 F.3d at 226 (counsel is not ineffective for failing to make a meritless argument). Miller is not entitled to relief on this claim.

### 3. § 3553 allows sentence below the mandatory minimum[3]

Miller further argues his counsel was ineffective for failing to argue that 18 U.S.C. § 3553 permits a sentence below the mandatory minimum. The Government responds that Miller is confusing the statutory range of punishment with the sentencing guidelines, which are only advisory. See United States v. Booker, 543 U.S. 220, 245-46 (2005).

Subject to limited exceptions, none of which apply here, a sentencing court may not depart below the mandatory minimum sentence absent a motion by the Government based on a defendant's substantial cooperation.[4] See United States v. Johnson, 988 F.2d 859 (8th Cir. 1993); United States v. Hawley, 984 F.2d 252, 254 (8th Cir. 1993); United States v. Buckendahl, 251 F.3d 753, 764 (8th Cir. 2001). Miller argues his counsel was ineffective for failing to argue grounds for downward departure. However, the Government did not file a motion for downward departure. Therefore, the Court could not have Imposed a sentence below the mandatory minimum. Regardless, as reflected in the sentencing transcript, the Court stated reasons why it would never have considered a downward departure given the horrific nature of the crimes that Miller admitted, rendering this claim frivolous. A lawyer cannot be considered ineffective for failing to raise an argument that could not have succeeded. Rodriguez, 17 F.3d at 226. This claim is denied.

---

[3] The Government argues this claim, asserted for the first time in Miller's amended § 2255 motion, is time-barred. Because as discussed herein, the claim fails on the merits, the Court will not address the timeliness argument.

[4] "A motion under § 5K1.1 authorizes the sentencing court to depart below the applicable advisory guideline range in determining the advisory guideline sentence, and a § 3553(e) motion permits the court to sentence below a statutory minimum." United States v. Diaz, 546 F.3d 566, 567 (8th Cir. 2008) (citing United States v. Williams, 474 F.3d 1130, 1131 (8th Cir. 2007).

9

### 4. Parity of sentences vs. disparity in offenses

Miller claims his counsel was ineffective for failing to challenge the reasonableness of the sentencing guidelines, particularly in relation to sentences in child pornography cases when compared to "more serious and violent crimes" such as murder or terrorism. He argues the Guidelines' recommended child pornography sentences are based on unsound policy and disproportionately high. Even if there were merit to Miller's arguments, an issue the Court need not address, the fact remains that his Guidelines sentencing range was – without objection – between 360 months to life. His disagreement with this range rests ultimately with the Sentencing Commission and, through it, with Congress. United States v. Motto, 70 F. Supp. 2d 570, 579–80 (E.D. Pa. 1999), aff'd, 225 F.3d 651 (3d Cir. 2000). Moreover, the fact that Miller takes exception to the current state of the sentencing laws for child pornography offenses fails to demonstrate that his counsel was ineffective. This claim is denied.

### 5. Victim's family disagreed with sentence

Miller claims his counsel was ineffective for failing to emphasize to the Court that the victim's family asked for leniency and counseling instead of a long prison sentence. The record refutes his claim. During the sentencing hearing, the Court noted it was in receipt of "a number of letters that, [Mr.] Hereford, you filed with the Court. I have had an opportunity to read through those." (Sentencing Tr. at 7). Miller's counsel also asked the Court to hear from the victim's mother at sentencing, stating, "I also would like the Court to take note of the position of the victim's mother in this case. She is actually going to come up and make a statement in a minute, if the Court would allow her to do so." (Sentencing Tr. at 8). After the victim's mother requested that Miller receive a lesser sentence of 15 years, counsel reinforced her request, stating, "I would hope the Court would take into full consideration the statement that she just made to the

Court." (Sentencing Tr. at 12, 15). Based on these actions at sentencing, counsel's representation in this matter was objectively reasonable. This claim is denied.

### 6. Supervised release instead of long prison sentence

Miller claims his counsel was ineffective for failing to argue for an extended period of supervised release in lieu of a long prison term in order to access treatment and counseling. As the Government correctly points out, such a sentence would have been inconsistent with the parties' negotiated plea agreement. Moreover, Miller was not eligible for this type of sentence in the first instance. On Count 1, the statutory mandatory minimum term of imprisonment is 25 years, with a maximum term of 50 years. 18 U.S.C. § 2251(a); 18 U.S.C. § 2251(e). On Count 2, the statutory mandatory minimum term of imprisonment is 15 years, with a maximum term of 40 years. 18 U.S.C. § 2252A(a)(2); 18 U.S.C. § 2252A(b)(1). Under these circumstances, counsel's failure to argue for supervised release cannot be said to be outside the broad range of reasonable assistance in this case. See Dyer v. United States, 23 F.3d 1424, 1426 (8th Cir. 1994); Rodriguez, 17 F.3d at 226.

### B. PSR

### 1. Copy of PSR

Miller argues his counsel was ineffective for failing to ensure that he was provided with a copy of the PSR prior to sentencing to review. Miller's claim is refuted by the record and his sworn testimony acknowledging to the Court at sentencing that he had received and understood the PSR:

> Q (By the Court) [Mr.] Miller, again, I want to ask you, sir, you had an opportunity to review the presentence report; is that correct?
> A I did, your Honor.

11

Q You went over it with [Mr.] Hereford, and he answered any questions you might have had?
A He did, your Honor.
Q Do you believe you fully understood everything in the presentence report?
A Yes, sir.
Q You understood how it went through, calculated a total offense level, a criminal history score, and criminal history background, and a criminal history category; is that correct?
A Yes, sir.
Q From that, it came up with a guideline range. The guideline range was 360 months to life, based on a total offense level of 40, and a criminal history category of three; is that correct?
A Yes, your Honor.
Q I just want to ask you here today, again you have indicated you understood all of that. Do you have any objections to any of the factual statements in the presentence report, or the manner and method by which it went through and calculated those total offense level, criminal history score, criminal history category, the guideline range, any objections?
A No, your Honor. My issues were addressed. I don't have anything.
Q All right. So again, to the final report, you have no objections of any kind to that?
A No, sir.

(Sentencing Tr. at 5-6). The record clearly refutes Miller's allegations about not seeing the PSR. This claim is denied.

### 2. Application of § 2G2.1(b)(5)

Miller claims his counsel was ineffective for failing to challenge the two-level enhancement to Count 1 for "supervisory control of victim" under § 2G2.1(b)(5). Miller argues the enhancement should not apply because his presence in the same room as the victim did not establish that he had been entrusted with her custody.

Miller's argument incorrectly focuses on the legal status, rather than the actual relationship, between himself and the victim – his girlfriend's seven-year old daughter who suffers from cerebral palsy and autism and has a severely limited vocabulary. L.K. left her daughter and Miller sitting on her bed while she took a shower, thereby implicitly if not explicitly entrusting her

12

daughter's care to Miller. Section 2G2.1(b)(5) is intended "to have broad application and includes offenses involving a minor entrusted to the defendant, whether temporarily or permanently." U.S.S.G. § 2G2.1(b)(5), Application Note 5.

Further, the record demonstrates that Miller was aware of the enhancements and the facts that made them applicable, and agreed to both. The enhancements were expressly set forth in the written plea agreement, which Miller acknowledged reading and reviewing with his attorney. (Plea Agreement at 11; Plea Tr. at 24). There were no side deals or unwritten promises that negated the enhancements. Miller confirmed there were no other promises made to him beyond what was in the plea agreement. (Plea Agreement at 22; Plea Tr. at 29-30). Counsel's performance can hardly be deemed to fall below the objective standard of reasonableness for failing to raise a meritless challenge to the application of this guideline. This claim will be denied.

### 3. Application of § 2G2.2(b)(3)(F) and nonapplication of § 2G2.2(b)(1)

Miller claims his counsel was ineffective for failing to argue against the application of a distribution enhancement to Count 2 under U.S.S.G. § 2G2.2(b)(3)(F) and for the application of a 2-level reduction under U.S.S.G. § 2G2.2(b)(1). Miller argues that Count 2 charged him with *receipt* of child pornography as opposed to *distribution* of child pornography, and that if any distribution occurred as a result of his use of a file-sharing network, it happened without his knowledge or intent. The Government responds that based on the facts set forth in the plea agreement, the enhancement was properly calculated and counsel was not ineffective for not challenging it.

There was no dispute that Miller was offering to share video images of child pornography on BitTorrent, a peer-to-peer network, and that between April 20, 2014 and May 6, 2014, an undercover officer was able to download several video files from Miller's IP address. The fact that

13

distribution occurred is not surprising, given that this is precisely how a file sharing program is designed to work. Miller installed and used a file sharing program, so he bears a heavy burden of demonstrating that (1) distribution did not occur and (2) that he did not know it would occur. As the Eighth Circuit has explained, "the purpose of a file sharing program is to share, in other words, to distribute. Absent concrete *evidence* of ignorance—evidence that is needed because ignorance is entirely counterintuitive—a fact-finder may reasonably infer that the defendant knowingly employed a file sharing program for its intended purpose." Troupe v. United States, No. 10-03038-01-CR-S-ODS, 2014 WL 7330988, at *3 (W.D. Mo. Dec. 19, 2014) (quoting United States v. Dodd, 598 F.3d 449, 452 (8th Cir.), *cert. denied*, 561 U.S. 1037 (2010)) (emphasis in the original); see also United States v. Glassgow, 682 F.3d 1107, 1110 (8th Cir. 2012) (Evidence that defendant built his computer, uploaded and downloaded files containing images of child pornography, and knowingly made files available for distribution through use of a file-sharing program supported imposition of a distribution enhancement, although defendant claimed he did not intend to distribute the images.). Here, all Miller has done is baldly assert that he did not know that his file sharing program would actually share files with others. Even if his counsel had advanced this argument it would have been rejected, so Miller has not suffered any prejudice from counsel's failure to advance it. Troupe, 2014 WL 7330988, at *3. This claim is denied.

### 4. Psychosexual assessment/SOTP

Miller claims his counsel was ineffective for failing to explain the reasons for his inability to complete a sex offender treatment program (SOTP) during his incarceration in Colorado on a prior conviction for child pornography. Miller fails to show he was prejudiced by his counsel's alleged failure given that the Court accounted for his need for sex offender treatment at sentencing

14

and recommended that he be evaluated for participating in the Sex Offender Treatment and Counseling Program. (Sentencing Tr. at 20).

Miller further claims his counsel was ineffective for failing to order a psychosexual assessment of him prior to sentencing. The Government responds that many reasonable attorneys choose not to order psychosexual assessments in cases such as this to avoid the risk that their client is found to be a predatory sex offender. Under Strickland, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable ...." Hall v. Luebbers, 296 F.3d 685, 693 (8th Cir. 2002) (quoting Strickland, 466 U.S. at 690). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; the Court does not "second guess" strategic decisions. Anderson, 393 F. 3d at 753. This claim is denied.

### C. Evidentiary issues

### 1. Search warrant

Miller claims that a copy of the search warrant was not left at his apartment, thereby rendering the evidence used in the Government's case "fruit of the poisonous tree." He alleges his counsel was ineffective for failing to obtain a copy of the search warrant to verify its existence and validity. Miller fails to satisfy the prejudice requirement of Strickland because whether or not a copy of the search warrant was left at Miller's apartment would not have led to the dismissal of the case or the charges.

Federal Rule of Criminal Procedure 41[5] applies exclusively to federal searches. United States v. Spencer, 439 F.3d 905, 913 (8th Cir. 2006) (citing United States v. Schroeder, 129 F.3d

---

[5] Federal Rule of Criminal Procedure 41(f)(3) provides that "[t]he officer executing the warrant must: (A) give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose

439, 443 (8th Cir. 1997)). Here, the state court issued the search warrant for Miller's property, and state law enforcement officers executed the search warrant.[6] Like in Spencer, Miller produced no evidence that federal law enforcement personnel executed the search warrant, initiated or participated in the search, or had any intention of using the state investigation to charge Miller in federal court. Thus, Rule 41 does not apply. See id. Even if the search were federal in character, noncompliance with Rule 41 "does not automatically require exclusion of evidence in a federal prosecution." Id. (citing United States v. Schoenheit, 856 F.2d 74, 76 (8th Cir. 1988)). Exclusion is required only if a defendant is prejudiced or if reckless disregard of proper procedure is evident. United States v. Bieri, 21 F.3d 811, 816 (8th Cir.1994); United States v. Nyah, 928 F.3d 694, 700 (8th Cir. 2019), reh'g denied (July 31, 2019). Neither criterion is satisfied here.

"To determine prejudice, we ask whether the search would have occurred had the rule been followed. If so, there is no prejudice to the defendant." United States v. Welch, 811 F.3d 275, 281 (8th Cir. 2016) (citing United States v. Hyten, 5 F.3d 1154, 1157 (8th Cir. 1993)). Nothing in the record indicates that had the officers followed Rule 41 they would not have been able to search Miller's apartment and obtain the evidence they did. Thus, Miller did not suffer any prejudice from not receiving a copy of the warrant and did not make a showing the officers acted with reckless disregard. This claim is denied.

### 2. Violation of Federal Rule of Criminal Procedure 403

Miller claims his counsel was ineffective for failing to object to the Government's reference to an artificial sexual device located in his apartment described as a female child

---

premises, the property was taken; or (B) leave a copy of the warrant and receipt at the place where the officer took the property."

[6] The Government has attached a copy of the search warrant to its response. (Doc. No. 36-1).

16

buttocks and vagina and pictures on his phone of neighborhood children (girls) at the swimming pool and playing outside. Miller argues that the Government offered no proof and that its only purpose was to confuse the issue and "paint [him] in the worst possible light."

18 U.S.C. § 3553 lists several factors the Court may consider in imposing a sentence, including "the nature and circumstances of the offense and the history and characteristics of the defendant." Finding a child sized sexual device in Miller's home is clearly relevant to the nature and circumstance of the offenses with which he is charged. Likewise, the fact that Miller had pictures of neighborhood children in the swimming pool and playing outside on his home computer is relevant based on the nature of his offense. The Government represents that had Miller's counsel objected to these arguments, it would have brought in the pictures for the Court to view. Counsel cannot be said to be ineffective for failing to object to appropriate argument at sentencing. Rodriguez, 17 F.3d at 226. This claim is denied.

### D. Advocacy

Miller claims his counsel was ineffective for failing to spend "adequate time" with him discussing case details or defense strategy; failing to investigate case precedent and application of points enhancement; and failing to argue against any of the Government's claims. The record refutes Miller's claim that his counsel did not advocate on his behalf.

Miller's counsel met and spoke with him on over ten separate occasions to discuss the case against him, his options, and a defense strategy. (Affidavit of Attorney Richard Hereford ("Hereford Aff.") Doc. No. 6-1 at ¶¶ 2, 3). Counsel negotiated a plea agreement on behalf of Miller and with his consent. (Id. at ¶¶ 4-6). He also advocated for a downward departure at sentencing:

> HEREFORD: Judge, ... the Government and the defendant are asking for that downward departure ... [Miller] has been able to contribute significantly to society.

17

> At one point, had an excellent job. And I also would like the Court to take note of the position of the victim's mother in this case.

(Sentencing Tr. at 7-8; Hereford Aff. at ¶ 7). As discussed above, the victim's mother gave a statement to the Court, requesting Miller receive a lesser sentence of 15 years, and counsel reinforced the mother's request by saying, "I would hope the Court would take into full consideration the statement that she just made to the Court." (Sentencing Tr. at 12, 15).

Further, the record establishes that Miller did not notify the Court of any issues he had with his attorney, despite being given the opportunity during the plea and at sentencing to advise the Court of any misgivings, issues, concerns, or problems he was having with his attorney. Rather, Miller stated he had had enough time to talk to his counsel about his case, that his counsel had answered all of his questions and done everything he asked him to do, and that he was satisfied with his representation. (Plea Tr. at 6; Sentencing Tr. at 3-4). Miller has failed to overcome the presumption that his attorney rendered adequate assistance and made all significant decisions in the exercise of professional judgment and thus failed to meet his burden under Strickland. See Hall, 296 F.3d at 692. Furthermore, it is clear from the record at sentencing that it was not a lack of advocacy but rather the horrific nature of the crimes Miller admitted that resulted in the sentence imposed in this case. This claim is denied.

### E. Addendum to § 2255 motion

On June 3, 2019, Miller requested leave to submit an addendum to his § 2255 motion. The Court hereby grants his request and considers the addendum. In his addendum, Miller argues he is entitled to relief based on the United States Supreme Court rulings in Johnson v. United States, 135 S. Ct. 2551 (2015) and Sessions v. Dimaya, 138 S. Ct. 1203 (2018). In Dimaya, the Supreme Court determined that the residual clause of 18 U.S.C. § 16(b) was unconstitutionally

vague. Dimaya, 138 S. Ct. at 1223. In doing so, it relied on a similar clause in the Armed Career Criminal Act (ACCA) that had been held unconstitutional in Johnson, 135 S. Ct. 2551. Miller argues that the offenses he was charged with constitute "crimes of violence" under § 3156(a)(4)(C). Because the language in § 3156(a)(4) is identical to the language in 16(b) found unconstitutionally vague in Dimaya, he contends that his conviction and sentence is also unconstitutional. Upon review of Miller's criminal case, it does not appear that the Bail Reform Act, 18 U.S.C. § 3156, which governs the release or detention of a defendant pending sentencing, played any role in Miller's charges, conviction, or sentence. Thus, this claim fails on the merits and will be denied.

### F. Motion for default judgment

Miller urges the Court to enter default judgment against the Government for failing to respond to his addendum and grant him the relief he seeks in this case. Miller has not asserted a valid basis for a default judgment. Pursuant to Rule 55 of the Federal Rules of Civil Procedure, a default only occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules. Therefore, his motion will be denied on the merits.

### IV.    Conclusion

After careful consideration of each of Miller's claims, the Court concludes that he is not entitled to the relief he seeks under § 2255 because he has not met his burden of showing Strickland ineffectiveness.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Carlton Miller's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [1, 26] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's request for leave to submit an addendum to his § 2255 motion [44] is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner's motion for default judgment [45] is **DENIED** on the merits.

**IT IS FINALLY ORDERED** that this Court will not issue a certificate of appealability, as Miller has not made a substantial showing of the denial of a federal constitutional right.

Dated this 18th day of September, 2019.

*/s/ John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**